Jennifer J. Middleton, OSB 071510
jmiddleton@justicelawyers.com
JOHNSON, JOHNSON & SCHALLER, PC
975 Oak Street, Suite 1050
Eugene, OR 97401-3124
Phone: 541/683-2506
Fax:    541/484-0882
   Attorneys for Plaintiff Jane Doe

John C. Clune, Pro Hac Vice Pending
clune@hbcboulder.com
Keith M. Edwards, Pro Hac Vice Pending
kedwards@hbcboulder.com
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302-5173
Phone: 303/442-6514
Fax:    303/442-5693
   Attorneys for Plaintiff Jane Doe

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| JANE DOE,[1]<br><br>   Plaintiff,<br><br>v.<br><br>UNIVERSITY OF OREGON, DANA DEAN ALTMAN, AS AN INDIVIDUAL.<br><br>   Defendant. | CASE NO. 6:15-cv-42<br><br>**COMPLAINT**<br><br>(Violation of Title IX, 20 U.S.C. § 1681(a); Negligence; Due Process; Equal Protection; Intrusion Upon Seclusion)<br><br>**JURY TRIAL DEMANDED** |

---

[1] Plaintiff proceeds here under pseudonym consistent with other Ninth Circuit courts' treatment of party names in highly sensitive sexual assault cases that arise under Title IX of the Education Amendments, *see, e.g., United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir.1981), and to protect the privacy, safety, and educational opportunities of Plaintiff as a current student at the University of Oregon. Additionally, Defendants are aware of the identity of the Plaintiff and will not be otherwise prejudiced by proceeding in this fashion. If needed, Plaintiff will seek other appropriate relief from the Court to continue to proceed in this fashion and to otherwise protect her anonymity throughout the instant litigation.

PAGE 1 - COMPLAINT

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Jane Doe ("Plaintiff"), sues Defendant University of Oregon ("Defendant" or "UO") and Defendant Dana Dean Altman, and pursuant to Rule 8, Federal Rules of Civil Procedure, alleges:

### Introduction

1.

This is an action involving claims under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 [hereinafter, "Title IX"], the United States Constitution, and state law, arising out of forcible rape occurring within an educational program or activity.

### Parties, Jurisdiction, and Venue

2.

Plaintiff is a resident of Clackamas County, Oregon, and a current student at UO.

3.

UO is a government educational institution with its primary campus in Eugene, Oregon.

4.

UO receives federal funding and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

5.

Upon information and belief, Defendant Altman is a resident of Lane County, Oregon, and an employee of UO.

6.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

7.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## General Allegations

### SUMMARY

8.

On or about March 8, 2014, Plaintiff, a freshman student, was attending a party with her friends and became intoxicated at an off-campus residence rented by Jonathan Lloyd, a member of the UO men's basketball team.

9.

At the party, Plaintiff was cornered in a bathroom by three men who began to grope Plaintiff and remove her clothes. The men were all UO students and players on the men's basketball team.

10.

Plaintiff attempted to keep her clothes on and push the men away, but she was overwhelmed by their size and strength, leaving Plaintiff trapped in the small bathroom with no ability to escape.

11.

The men pushed her cell phone out of her reach saying "no one wants to talk to you" and commenced the first of multiple gang rapes of Plaintiff.

12.

The three UO basketball players then took Plaintiff back to one of their UO off-campus housing apartments where they continued to gang rape Plaintiff, at one point trying to get additional students in the building to rape Plaintiff.

13.

After Plaintiff was crying for a period of time, the assailants lost interest and the rape finally stopped.

14.

Throughout the evening, the clear instigator and most aggressive of the three assailants was a man named Brandon Austin who had just transferred to UO from Providence College in January.

15.

Plaintiff reported the rape to her father via text message on the morning of March 9, 2014, and he immediately contacted the Eugene Police Department ("EPD"). Plaintiff cooperated fully with the EPD's investigation.

16.

Ten days after the rape of Plaintiff, the Wall Street Journal reported that Austin had been previously suspended at Providence College following an allegation of a gang rape occurring on or about November 3, 2013.

**Defendants UO and Altman Knew of Austin's Prior Sexual Misconduct**

17.

Brandon Austin began his college career at Providence College ("Providence") in Providence, Rhode Island, as a highly prized basketball recruit.

18.

On November 6, 2013, prior to the start of his freshman season at Providence, Austin and another Providence basketball player were suspended from the team indefinitely for a reported gang rape of another Providence student.

19.

Austin's indefinite suspension became a season-long suspension on December 23, 2013, when Providence officials found him responsible for sexual assault. Although Providence later reduced Austin's sanction, thereby allowing him to transfer to another school, he was still suspended for the entire basketball season due to his conduct. His suspension was widely reported in the media.

20.

Austin immediately sought to transfer to another school to continue his basketball career.

21.

Altman and other members of the UO basketball coaching staff immediately and actively recruited the suspended athlete to transfer to UO to play basketball.

22.

Upon information and belief, Defendant Altman, assistant coach Tony Stubblefield, and other UO personnel thoroughly investigated Austin's suspension and discussed the issues with Austin, his family and friends, and members of the Providence coaching staff.

23.

Upon information and belief, Altman and other UO personnel were fully aware of the basis for Austin's season-long suspension.

24.

In fact, Austin's mother, when asked about what the UO coaches knew, said, "We told them everything. They knew everything."

25.

Despite this knowledge, UO admitted Austin as a transfer student and granted Austin a full athletic scholarship. On January 6, 2014 – only two weeks after the public announcement of his season-long suspension at Providence for violations that Defendants knew involved sexual misconduct – Austin enrolled at UO to continue his basketball career.

26.

Although Austin could not play for UO in the 2013-2014 season due to NCAA eligibility rules for transfer students, UO and Altman otherwise granted Austin full academic and athletic privileges.

27.

UO and Altman did not impose any conditions on Austin or put into place any other protections, such as restrictions, monitoring, or counseling, to ensure that he did not present a threat to the UO community.

28.

UO and Altman did not notify the UO students and community that UO and Altman had knowingly brought a reported sex offender to the UO campus in Eugene.

### Defendant's Delay in Responding

29.

UO officials learned of the gang rape of Plaintiff on March 9, 2014, following Plaintiff's report to the Eugene Police Department.

30.

Then-UO President, Michael Gottfredson, knew of the sexual assaults no later than March 19, 2014.

31.

UO took no action on the matter until May 2014, when it first initiated procedures against Austin and his two teammates for violating the school's code of conduct.

32.

In the interim, the three players retained full academic and athletic privileges. Two of the three men went on to play key roles in UO's basketball games in the Pac-12 Conference Tournament and the NCAA Men's Basketball Tournament, and Defendant Altman was awarded large bonuses for the wins in the tournaments.

33.

During this time, UO failed to take effective corrective action to end the hostile educational environment Plaintiff experienced because of the rape and her continued exposure to the perpetrators, or to ensure Plaintiff's full and equal access to educational benefits and opportunities.

34.

Rather, UO delayed taking *any* action on the sexual assaults for over two months while it prioritized winning basketball games over the health, safety, and welfare of its students, including Plaintiff.

35.

Defendants claimed that they were instructed by the Eugene Police not to suspend the players from the team, but the Eugene Police Department publically denied the claim, indicating that they would have had no interest in such matters.

### UO Strikes a Disturbing Deal with the Three Athletes

36.

After the basketball season was over, the matter was investigated by the University and the local and national media widely covered the story.

37.

As required under the school's code of conduct, the disciplinary matter was scheduled for a hearing.

38.

But prior to the disciplinary hearing, UO negotiated a curious deal with the athletes. In exchange for their election of an "administrative conference," where the outcome is decided solely by the UO administration, UO would guarantee that the three men would not be expelled, would have no mention of sexual misconduct on their transcripts, and that no one would receive a physical copy of the final written outcome – including Plaintiff.

39.

As UO explained to Plaintiff's counsel, omitting the words "sexual misconduct" from their transcripts and the guaranteed lack of expulsion would then help the three men transfer to another school.

40.

UO Director of Student Conduct found all three men responsible for sexually assaulting Plaintiff and suspended each from UO for 4-10 years.

41.

As of the time of this filing, two of the adjudicated sex offenders have successfully transferred to other schools to play basketball.

42.

UO significantly delayed completion of the disciplinary proceedings against the three men until immediately after the conclusion of the academic quarter.

43.

Upon information and belief, UO delayed finalizing the disciplinary proceeding to allow the three players to complete the academic quarter in good standing and transfer out of the university without harming the basketball program's Academic Progress Rate or "APR" – a "team-based metric that accounts for the eligibility and retention of each student-athlete, each term"[2] – and incurring NCAA sanctions, including the loss of scholarships and/or postseason bans.

## UO Unlawfully Obtains Plaintiff's Counseling Records

44.

UO officials and Plaintiff have discussed these matters and the allegations contained herein. Plaintiff told these officials about the emotional distress she experienced, which was well documented in Plaintiff's post-assault counseling sessions with a confidential therapist at the UO Counseling and Testing Center.

---

[2] http://www.ncaa.org/about/resources/research/academic-progress-rate-apr.

PAGE 9 - COMPLAINT

45.

Counsel for Plaintiff told UO officials and attorneys that Plaintiff did not authorize the release of her privileged counseling file and instructed UO that the school administration and attorneys were not permitted to obtain those records from the Counseling and Testing Center. Those records contain much detail about Plaintiff's personal life and family that are not related to any issues surrounding these events.

46.

Shortly thereafter, in December 2014, a member of the UO administration contacted the Counseling and Testing Center and required that center to produce Plaintiff's privileged therapy records to the administration without any legal authorization. This directly contravened Plaintiff's clear instruction and violated both the Federal Educational Records and Privacy Act and the Heath Information Portability and Accountability Act, as well as state protections for medical records.

47.

On information and belief, the privileged records were unlawfully collected for the UO administration and their attorneys to gain advantage in preparing for any future litigation.

### FIRST CLAIM FOR RELIEF
### Violation of Title IX, 20 U.S.C. § 1681(a) (Against Defendant UO)
### Deliberate Indifference to Prior Sexual Violence

Plaintiff incorporates each and every allegation of the preceding paragraphs as if fully set forth herein.

48.

UO had actual knowledge of Austin's prior sexual harassment/rape of a female student at Providence from their recruiting investigation.

49.

UO had actual knowledge of the substantial risk that Austin would sexually harass other female students at UO based upon his prior conduct.

50.

UO officials, with the knowledge described above, had the authority to address the risk posed by Austin, and had the authority to institute corrective measures by either not admitting Austin or by closely supervising Austin, requiring sex offense-specific counseling, or otherwise notifying the UO community about his past sexual misconduct.

51.

UO's failure to address the risk posed by Austin in light of prior allegations of sexual misconduct was clearly unreasonable in light of the known circumstances.

52.

UO's conduct was deliberately indifferent to the substantial risk that Austin would sexually harass other female students at UO.

53.

As a result of UO's deliberate indifference, Plaintiff was subjected to extreme sexual harassment in the form of rape by Austin and his accomplices.

54.

The sexual harassment that Plaintiff suffered was so severe, pervasive, and objectively offensive that it deprived her of access to educational opportunities and benefits by creating a permanent and extreme hostile educational environment.

55.

Plaintiff has suffered damages and injuries as a result of UO's violations of Title IX.

## SECOND CLAIM FOR RELIEF
### Violation of Title IX, 20 U.S.C. § 1681(a) (Against Defendant UO)
### Deliberate Indifference to Plaintiff's Report of Rape

Plaintiff incorporates each and every allegation of the preceding paragraphs as if fully set forth herein.

56.

Beginning on March 9, 2014, UO had actual knowledge of sexual harassment of Plaintiff in the form of a violent gang rape inflicted upon her.

57.

Additionally, as early as December 2013 or January 2014, UO was on notice of other allegations of sexual assault and sexual misconduct perpetrated by Austin.

58.

UO was deliberately indifferent to reports of rape and sexual misconduct by failing to investigate Plaintiff's allegations for over two months while the three rapists continued to participate fully in the UO basketball program and educational program.

59.

UO further failed to institute any disciplinary measures during this time.

60.

Upon information and belief, UO made special disciplinary agreements for the three rapists and delayed finalizing disciplinary proceedings in order to protect the basketball program's academic progress rate.

61.

UO's failure to timely investigate and complete disciplinary proceedings in order to protect its basketball program subjected Plaintiff to a hostile educational environment so severe, pervasive, and objectively offensive that it effectively barred her access to educational opportunities and benefits.

62.

Plaintiff has suffered damages and injuries as a result of UO's violations of Title IX.

### THIRD CLAIM FOR RELIEF
### Negligence (Against Defendant UO)

Plaintiff incorporates each and every allegation of the preceding paragraphs as if fully set forth herein.

63.

UO had a duty to protect Plaintiff from sex discrimination, including but not limited to sexual assault by a fellow student.

64.

UO either knew or, in the exercise of reasonable care, should have known, that Austin had a history of sexual assault against a female student at another institution.

65.

UO breached its duty by recruiting Austin to its campus and granting him full academic and athletic privileges without any protective measures such as counseling, supervision, or monitoring of his behaviors.

66.

It was foreseeable that Austin's presence on campus would expose female students, including Plaintiff, to his conduct and behaviors, including sexual assault.

67.

UO's decision to admit Austin and grant him full academic and athletic privileges without protective measures such as supervision, counseling or monitoring was a substantial factor in causing Plaintiff damages and injuries.

### FOURTH CLAIM FOR RELIEF
### Deprivation of Due Process – Liberty – Under 42 U.S.C. § 1983
### (Against Defendant Altman)

Plaintiff incorporates each and every allegation of the preceding paragraphs as if fully set forth herein.

68.

Plaintiff has a constitutionally protected liberty interest in her own bodily security.

69.

Defendant Altman acted under color of state law and in his official and individual capacities in taking the actions alleged herein.

70.

Upon information and belief, Defendant Altman had actual knowledge of Austin's prior sexual harassment and assault of a female student at Providence.

71.

Upon information and belief, Defendant Altman had actual knowledge of the substantial risk that Austin would sexually harass female students at UO.

72.

With deliberate indifference to this known and obvious danger, Defendant Altman affirmatively and actively recruited Austin to UO and granted Austin a full athletic scholarship and all related privileges with no regard for the protection of female students in the UO community.

73.

Defendant Altman's deliberate indifference to this known and obvious danger exposed Plaintiff and other UO female students to danger they would not have otherwise faced.

74.

As a direct and proximate result of Altman's deliberate indifference, Plaintiff was deprived of her constitutional right to bodily security and suffered damages and injuries for which Altman is liable under 42 U.S.C. § 1983.

### FIFTH CLAIM FOR RELIEF
**Violation of Equal Protection, U.S. Constitution Fourteenth Amendment, Under 42 U.S.C. § 1983**
**(Against Defendant Altman)**

Plaintiff incorporates each and every allegation of the preceding paragraphs as if fully set forth herein.

75.

The actions of Defendant Altman as alleged herein were taken under color of state law and in his official and individual capacities.

76.

By the actions and omissions alleged herein, including but not limited to recruiting Austin to UO and failing to respond to Plaintiff's report of rape by three of the players he coached and supervised, Defendant Altman subjected Plaintiff to severe sexual harassment including rape, and a hostile educational environment on the basis of sex.

77.

Defendant had no exceedingly persuasive justification for his sex-based discrimination.

78.

Defendant's actions and omissions deprived Plaintiff of rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

79.

Plaintiff has suffered significant damages as a result of these violations, for which Defendant Altman is liable under 42 U.S.C. § 1983.

### SIXTH CLAIM FOR RELIEF
**Intrusion Upon Seclusion**
**(Against Defendant UO)**

Plaintiff incorporates each and every allegation of the preceding paragraphs as if fully set forth herein.

80.

By accessing a copy of Plaintiff's confidential counseling records without Plaintiff's authorization, UO intentionally and knowingly intruded upon her private personal affairs.

81.

UO's intrusion would be highly objectionable to a reasonable person.

82.

Plaintiff has suffered damages including stress, anxiety, and emotional distress as a result of UO's unauthorized intrusion.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendants as follows:

(a)     An Order enjoining Defendants, along with all of UO's agents, employees, and those acting in concert therewith, from unlawful discrimination on the basis of sex, including the failure to address, prevent, and/or remedy sexual harassment;

(b)     Injunctive relief requiring UO to redress its violations of Title IX, including (1) instituting, with the assistance of outside experts, and enforcing a comprehensive sexual harassment policy, including procedures for effective reporting of sexual harassment incidents, an effective and immediate crisis response, and an expanded victim assistance and protection program; (2) adopting a real "zero tolerance policy" under which there will be expedited proceedings and punishment proportional to the offense for violation of sexual harassment policies; and (3) providing for an annual, independent review by the Office of the President, with the participation of outside reviewers, of Athletic Department compliance with the sexual harassment and recruiting policies;

(c)     An award of damages against both Defendants in an amount to be established at trial, including, without limitation, reimbursement and prepayment for all of Plaintiff's tuition or related expenses; payment of Plaintiff's expenses incurred as a consequence of the sexual

assault; damages for deprivation of equal access to the educational benefits and opportunities provided by UO; and damages for past, present, and future emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present, and future enjoyment of life;

    (d)    An award of pre- and post-judgment interest;

    (e)    An award of costs and attorney fees, pursuant to 42 U.S.C. § 1988(b); and

    (f)    Such other relief as is just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

DATED: January 8, 2015.

Respectfully submitted,

JOHNSON, JOHNSON & SCHALLER, PC

By: _/s/ Jennifer J. Middleton_
Jennifer J. Middleton, OSB 071510
jmiddleton@justicelawyers.com
JOHNSON, JOHNSON & SCHALLER, P.C.
975 Oak Street, Suite 1050
Eugene, OR 97401-3124
Telephone:   541/683-2506
Fax:   541/484-0882

By: _pro hac vice pending_
John C. Clune, Colo. No. 27684
clune@hbcboulder.com
Keith M. Edwards, Colo. No. 42666
kedwards@hbcboulder.com
HUTCHINSON BLACK AND COOK, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302-5173
Phone:   303/442-6514
Fax:   303/442-5693

*Attorneys for Plaintiff*