**Michelle Barton Smigel, P.C.**, OSB No. 045530
michelle.smigel@millernash.com
**Michael Porter, P.C.**, OSB No. 003560
mike.porter@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  (503) 224-5858
Facsimile:  (503) 224-0155

      Attorneys for Defendants
      University of Oregon and Dana Dean Altman

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JANE DOE,<br><br>      Plaintiff,<br><br>v.<br><br>UNIVERSITY OF OREGON, DANA<br>DEAN ALTMAN, as an individual,<br><br>      Defendants. | CV No. 6:15-cv-00042-MC<br><br>DEFENDANTS' ANSWER, AFFIRMATIVE<br>DEFENSES, AND COUNTERCLAIM<br><br>JURY TRIAL DEMAND |

        Title IX rights and student safety at the University of Oregon ("Oregon") are

among Oregon's highest values and central to its mission.  Therefore, when Oregon's efforts in

service of that mission are falsely maligned, Oregon must set forth the facts.  Otherwise,

survivors of sexual misconduct will be chilled from coming forward, which would prevent

Oregon from (1) providing critical services and accommodations to survivors and (2) pursuing

Page 1 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

70003499.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

disciplinary actions against assailants so they are held accountable.  Oregon further affirms that it has not violated any confidentiality laws with respect to any students' records.  The allegations of wrongdoing against Oregon and Dana Altman are false, and therefore Oregon and Altman deny them.

## RESPONSE TO PLAINTIFF'S INTRODUCTION

1.      Answering paragraph 1, defendants state that plaintiff describes claims alleged in the complaint but deny the implication of wrongdoing.  Regarding the assertion that there was a "forcible rape," that is an allegation of a specific crime.  The District Attorney's Office declined to prosecute for that crime after determining there was insufficient evidence for such a prosecution.  In addition, defendants were not present during the alleged acts of "forcible rape" and therefore lack sufficient knowledge and information to admit or deny whether there was a "forcible rape," and, therefore deny that allegation.  Defendants further deny that any sexual activity occurred "within an educational program or activity" because plaintiff admits that the sexual activity at issue occurred off campus at private residences over which Oregon has no control.

## RESPONSE TO PLAINTIFF'S ALLEGATIONS REGARDING PARTIES, JURISDICTION, AND VENUE

2.      Answering paragraph 2, defendants admit that plaintiff is a resident of Clackamas County, Oregon, and a current student at Oregon.

3.      Answering paragraph 3, defendants admit that Oregon is a government educational institution with its primary campus in Eugene, Oregon.

4.      Answering paragraph 4, defendants admit that Oregon receives federal funding and is subject to Title IX of the Education Amendments of 1972, 20 USC § 1681 (a).

5.      Answering paragraph 5, defendants admit that Altman is a resident of Lane County, Oregon, and an employee of Oregon.

Page 2 -     Defendants' Answer, Affirmative Defenses, and Counterclaim

70003499.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

6.      Answering paragraph 6, defendants admit that this court has jurisdiction pursuant to 28 USC § 1331 and 28 USC § 1367.

7.      Answering paragraph 7, defendants admit that venue in this district is proper pursuant to 28 USC § 1391(b).

## RESPONSE TO PLAINTIFF'S GENERAL ALLEGATIONS
## PLAINTIFF'S SECTION TITLED "SUMMARY"

8.      Answering paragraph 8, defendants admit that on March 8, 2014, plaintiff was enrolled as a freshman at Oregon.  The remaining allegations concern alleged acts of others at a private residence.  Oregon has no control over the private residence and was not present there, and accordingly, defendants lack sufficient knowledge and information to admit or deny the remaining allegations of paragraph 8 and therefore deny them.

9.      Answering paragraph 9, which concerns the alleged acts of others at a private residence, Oregon did not control the individuals described or the private residence and was not present there.  Accordingly, defendants lack sufficient knowledge and information to admit or deny the allegations of paragraph 9 and therefore deny them.

10.      Answering paragraph 10, which concerns the alleged acts of others at a private residence, Oregon did not control the individuals described or the private residence and was not present there.  Accordingly, defendants lack sufficient knowledge and information to admit or deny the allegations of paragraph 10 and therefore deny them.

11.      Answering paragraph 11, which concerns the alleged acts of others at a private residence, Oregon did not control the individuals described or the private residence and was not present there.  Accordingly, defendants lack sufficient knowledge and information to admit or deny the allegations of paragraph 11 and therefore deny them.

12.      Answering paragraph 12, which concerns the alleged acts of others at a private residence, Oregon did not control the individuals described or the private residence and

70003499.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

was not present there.  Accordingly, defendants lack sufficient knowledge and information to admit or deny the allegations of paragraph 12 and therefore deny them.

13.   Answering paragraph 13, which concerns the alleged acts of others at a private residence, Oregon did not control the individuals described or the private residence and was not present there.  Accordingly, defendants lack sufficient knowledge and information to admit or deny the allegations of paragraph 13 and therefore deny them.

14.   Answering paragraph 14, which concerns the alleged acts of others at a private residence, Oregon did not control the individuals described or the private residence and was not present there.  Accordingly, defendants lack sufficient knowledge and information to admit or deny the allegations of paragraph 14 and therefore deny them.

15.   Answering paragraph 15, defendants admit that plaintiff's father contacted Oregon, specifically Oregon's police department, which informed Oregon's Title IX Coordinator and sexual assault response and support services team of the call and which directed plaintiff's father to the Eugene Police Department ("EPD"), because the matter involved an alleged crime off campus over which Oregon had no law enforcement jurisdiction.  Defendants further state that Oregon directed plaintiff's father to resources for plaintiff, because plaintiff's father indicated that plaintiff did not want to report the allegations.  Defendants lack sufficient knowledge and information to admit or deny the remaining allegations of paragraph 15 and therefore deny them.

16.   Answering paragraph 16, defendants deny that *The Wall Street Journal* stated that the student who transferred from Providence (the "Student") "had been previously suspended at Providence College following an allegation of a gang rape" as alleged.  Instead, the March 18, 2014, article, which was published months after the Student already transferred to Oregon, and after the alleged sexual assault of plaintiff, indicated (for the first time in any known media report) that the Student had been suspended from games (not from school) while at Providence for alleged sexual assault.  Defendants deny that the allegation accurately represents the information in the article and therefore deny the allegation.

Page 4 -   Defendants' Answer, Affirmative Defenses, and Counterclaim

70003499.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**RESPONSE TO PLAINTIFF'S ASSERTIONS THAT DEFENDANTS KNEW OF THE STUDENT'S PRIOR SEXUAL MISCONDUCT**

17.     Answering paragraph 17, defendants admit that a student attended Providence College in Providence, Rhode Island ("Providence"), and that he was considered a skilled basketball player.  Based upon documentation provided by Providence, defendants state that the Student began his college career at Providence.  Oregon denies the remaining allegations and characterizations in paragraph 17.

18.     Answering paragraph 18, defendants lack sufficient knowledge and information regarding the nature of the allegations against the Student to admit or deny the allegations of paragraph 18 and therefore deny them.  Defendants admit that the Student was suspended from playing in basketball games for a season at Providence but deny that he was suspended from all team activities, as alleged in paragraph 18.  Defendants state that the suspension from games was reported in the media in December 2013 as being the result of an "unspecified violation," and defendants deny that the media reports indicated the Student's suspension from games related to a "gang rape" or sexual assault, as implied in paragraph 18.

19.     Answering paragraph 19, defendants admit that the Student was suspended from playing in basketball games for a season at Providence but deny that he was ultimately suspended from Providence or from all team activities, following conclusion of Providence's disciplinary process, as implied in paragraph 19.  Defendants state that the suspension from games was reported in the media in December 2013 as being the result of an "unspecified violation," and defendants deny that the media reports indicated the Student's suspension from games related to a "gang rape" or sexual assault, as implied in paragraph 19.  Further, it was subsequently reported that the finding of sexual misconduct was overturned.[1]  Defendants lack sufficient knowledge and information to admit or deny whether the Student was found

---

[1] Lynn Arditi, *Panel's decision to bar Brandon Austin from Providence College campus was overturned by college vice president*, Providence Journal, May 16, 2014.

Page 5 -     Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

"responsible for sexual assault" while at Providence but state that a Providence official was quoted in March 2014 media reports as "recommend[ing] against drawing any conclusions that [Providence's] process ended with a finding that [its] student-athlete was found responsible for sexual assault."[2] Except as specifically admitted, defendants deny any further allegations of paragraph 19.

20.     Answering paragraph 20, defendants admit that the Student sought to transfer. Defendants lack sufficient knowledge and information about what plaintiff means by "immediately sought" and therefore deny that allegation.

21.     Answering paragraph 21, defendants admit that Altman and Oregon basketball coaching staff recruited the Student. To the extent that paragraph 21 implies that the Student was suspended from Providence or from all team activities, that is not accurate, and defendants deny the allegation.

22.     Answering paragraph 22, defendants admit that defendants engaged in an appropriately thorough investigation of the student's suspension in light of the circumstances and facts made available to defendants by Providence and that the investigation did not reveal the nature of the allegations. Defendants further admit that they asked the Student's mother and Providence coaching staff about the nature of the Student's discipline and that they were informed by Providence coaching staff that the discipline was not for a criminal matter and by the Student's mother that it related to an "altercation" between the Student and another individual. Neither Oregon nor Altman was told by the Student, the Student's mother, the Student's family, the Student's friends, or any representative of Providence that the discipline related to alleged sexual misconduct, or even that a female was involved. Defendants further state that Providence sought to retain the Student, further confirming defendants' understanding and belief that it was appropriate to continue to recruit the Student.

---

[2] Matthew Futterman and Rachel Bachman, *Providence Police Investigating Players for Sexual Assault*, The Wall Street Journal, March 18, 2014.

Page 6 -     Defendants' Answer, Affirmative Defenses, and Counterclaim

70003499.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

23.     Answering paragraph 23, defendants deny that they were fully aware of the basis for the Student's season-long suspension from basketball games at Providence. Accordingly, defendants deny the allegations of paragraph 23.

24.     Answering paragraph 24, defendants deny the implication of the allegation that the Student's mother told Oregon or Altman that the Student had been accused of sexual misconduct at Providence. Defendants further state that plaintiff's allegation is vague, ambiguous, and provides no context for the alleged quoted language. Defendants therefore deny the allegations of paragraph 24.

25.     Answering paragraph 25, defendants admit that the Student was admitted to and provided a scholarship for basketball at Oregon and that he enrolled there in January 2014. Defendants deny the remaining allegations of paragraph 25.

26.     Answering paragraph 26, defendants admit that the Student was not permitted to play during the 2013-2014 season due to NCAA eligibility rules for transfer students and admit that the Student enrolled at Oregon. Defendants deny that Altman has the authority to grant "full academic and athletic privileges" and deny any implication of wrongdoing in paragraph 26.

27.     Answering paragraph 27, defendants state that no specific conduct conditions were unique to the Student because they had no information suggesting that such conditions were necessary or appropriate. Defendants deny the remaining allegations or implications of paragraph 27.

28.     Answering paragraph 28, Oregon and Altman did not "knowingly [bring] a reported sex offender" to the Oregon campus and deny that allegation and the remaining allegations of paragraph 28.

70003499.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

### RESPONSE TO PLAINTIFF'S ASSERTIONS OF DEFENDANTS' DELAY IN RESPONDING

29.     Answering paragraph 29, defendants state that plaintiff's father reported an alleged rape on March 9, 2014, to Oregon's police department, and that plaintiff's father stated that plaintiff did not want to report the incident, that he did not have the names of the alleged perpetrators, and that he did not know whether the alleged incident occurred on campus or off campus but he believed it was off campus.  Except as specifically admitted, defendants deny the allegations of paragraph 29.

30.     Answering paragraph 30, defendants admit that no later than March 19, 2014, then President Michael Gottfredson knew that plaintiff had made allegations of sexual assault.  Defendants deny the remaining allegations of paragraph 30.

31.     Defendants deny the allegation of paragraph 31 that Oregon "took no action on the matter until May 2014."  Defendants further state the following:  Oregon's sexual assault response and support services team began reaching out to plaintiff the same day as her father's report to Oregon's police department.  Plaintiff did not respond to calls from the sexual assault response and support services team for approximately four days.  They nevertheless left phone messages and sent written correspondence to plaintiff and continued communications with plaintiff's father, advising both of them regarding support services available to plaintiff and reporting options, including plaintiff's right to report the incident to law enforcement and to file a Title IX complaint with Oregon.  Plaintiff requested that Oregon delay its investigation until April 7, 2014, choosing first to file a police report with EPD in order to initiate the law enforcement process and pursue possible criminal prosecution.  Consistent with Title IX guidance,[3] Oregon honored plaintiff's choice about how to proceed with the investigation and agreed to suspend its investigation during the active fact-gathering stage of EPD's law

---

[3] The United States Department of Education, Office for Civil Rights, issues guidance regarding Title IX.

Page 8 -     Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

enforcement investigation.  Oregon also agreed, in accordance with EPD's and plaintiff's requests, not to take any administrative action that could compromise the EPD investigation by tipping off the players that something was wrong.  On March 18, 2014, a day before Oregon's men's basketball team was scheduled to travel to the 2014 NCAA men's basketball tournament, Oregon contacted EPD to ensure the investigating officers were aware of the team's travel schedule and to offer to hold players back from tournament play to allow EPD to complete its investigation.  EPD reiterated its prior request that Oregon continue to take no action that might compromise the law enforcement investigation process;  preventing two players from traveling with the team would have alerted everyone that something was wrong and likely would have hindered law enforcement's investigation.  On or around April 2, 2014, shortly before EPD completed the active fact-gathering stage of its investigation, plaintiff expressed concern regarding the pace of the law enforcement investigation to Oregon's sexual assault response and support services team.  Accordingly, she met with Oregon's Title IX investigator the following day and was again advised of her right to transition to Oregon's internal Title IX complaint process.  Plaintiff declined Oregon's offer to initiate its investigation at that time, electing to allow EPD additional time to complete the on-going, fact-gathering stage of the law enforcement investigation.  On April 7, 2014, plaintiff asked Oregon to move forward with its internal investigation, which it did immediately.  Although Oregon had suspended its investigation in accordance with plaintiff's request until April 7, 2014, Oregon took other actions in the meantime in accordance with Title IX.  For example, Oregon's sexual assault response and support services team provided plaintiff regular support throughout March and April 2014, the period in which paragraph 31 of the complaint wrongly asserts that "[Oregon] took no action." During that time, Oregon offered to implement no-contact orders between plaintiff and the male students (which plaintiff declined), worked regularly to provide plaintiff with information about campus and other resources, provided information regarding both the law enforcement and internal Title IX process, and offered and implemented academic accommodations for plaintiff.

Page 9 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Oregon also repeatedly requested EPD's report or, short of that, any information EPD could provide, in order to facilitate prompt completion of Oregon's Title IX investigation.  Oregon ultimately obtained the EPD report from the Lane County District Attorney's Office on April 24, 2014, and thereafter completed its preliminary Title IX investigatory report on April 29, 2014.

        32.    Answering paragraph 32, defendants state that, in accordance with Title IX guidance, Oregon took interim measures to protect plaintiff in the educational setting while suspending its own fact-finding investigation to allow EPD to complete the active fact gathering stage of its investigation.[4]  Defendants further state that on April 30, 2014, the day after Oregon completed its preliminary Title IX investigatory report and Altman reviewed the EPD report, the accused students were removed from the basketball team because Oregon determined that the conduct that the accused students did not dispute in the police report was inconsistent with Oregon's expectations for student athletes.  In accordance with Oregon's Student Conduct Code set forth in Oregon Administrative Rule 571-021-0105 then in effect, Oregon then also implemented its disciplinary process to determine whether the responding students had violated the Student Conduct Code and determine whether Student Conduct Code sanctions were warranted.  Defendants admit Altman received bonuses for wins in the tournament, but deny the implication that any decision by Oregon or Altman related in any way to compensation.  Defendants note that the Student at the heart of plaintiff's allegations did not even travel to the tournament because he was not eligible to play due to NCAA transfer rules.  Except as specifically admitted, Oregon denies the allegations of paragraph 32.

        33.    Defendants deny the allegations of paragraph 33 and took numerous actions to work with plaintiff to provide her with support, in addition to those described in

---

[4] Plaintiff's attorneys' position now, as alleged in the complaint, is that despite plaintiff's own choice that Oregon allow the criminal investigation to proceed, Oregon should have then immediately ignored her request and foiled that investigation by alerting the three men to the criminal investigation, thereby interfering with EPD's ability to collect evidence.

Page 10 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

response to paragraph 31, including offering plaintiff counseling services, providing plaintiff with safety information, offering plaintiff support throughout the criminal investigation process, and providing support and guidance concerning plaintiff's online presence.

34.     Answering paragraph 34, defendants deny that Oregon delayed taking any action on the alleged sexual assaults for over two months and deny that Oregon prioritized winning basketball games over the health, safety, and welfare or its students, including plaintiff.

35.     Answering paragraph 35, defendants state that EPD informed Oregon that it should not take any administrative action, which would include suspending the accused students from team activities, because such action could serve to tip off the accused and compromise EPD's investigation.[5]  Therefore, defendants deny the allegations in paragraph 35.

## RESPONSE TO PLAINTIFF'S ALLEGATIONS THAT "[OREGON] STRIKES A DISTURBING DEAL WITH THE THREE ATHLETES"

36.     Answering paragraph 36, Oregon states that it investigated the matter, beginning immediately when plaintiff asked it to, and that the basketball season concluded during the pendency of the fact gathering stage of EPD's investigation.  Defendants admit that the story was widely covered in media reports at the close of basketball season, although many were largely erroneous.  Defendants deny the remaining allegations of paragraph 36.

37.     Answering paragraph 37, Oregon admits that the Oregon Administrative Rule in place at the time provided for either a panel hearing or a hearing by an administrative

---

[5] Plaintiff appears to be taking out of context a statement by EPD spokesperson Melinda McLaughlin that was reported in a misleading *Oregonian* article by John Canzano.  Canzano wrote: "Eugene PD spokesperson Melinda McLaughlin told me on Wednesday that the [Eugene Police] department did ask the UO to delay its administrative review.  However she also said, 'Police are not going to be concerned about who participates in a sporting event.'"  Despite Ms. McLaughlin's statement that EPD *did* ask Oregon to delay its administrative review, Canzano's article concludes that "[i]t's a cover-up at the University."  *See* John Canzano, *It's a Cover-up at the University of Oregon*, Oregonian, May 9, 2014.  Both EPD and plaintiff did ask Oregon to refrain from taking any action against the players until the police investigation had been completed, and Oregon honored those requests.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

conference and that a panel hearing was initially scheduled and then, due to plaintiff's concerns about having to testify or otherwise participate in a formal panel hearing process, an administrative conference hearing was scheduled.

38.    Answering paragraph 38, Oregon admits that the Oregon Administrative Rule in place at the time specified a hearing as part of the disciplinary process. The Code of Conduct allowed for one of two types of proceedings at the accused students' request: an administrative conference in front of a single conduct officer wherein the accused students would not question the plaintiff or otherwise compel her presence, or a hearing in front of a panel of at least four people, where more formal rights to question the plaintiff existed. In consultation with plaintiff's attorney, Oregon proposed the administrative conference process to help protect plaintiff and ensure that she did not have to appear in front of a panel and be subject to the accused students' questioning. Plaintiff's attorney endorsed that process. At the administrative conference, Oregon still had the option to either (a) exonerate the accused students if no policy violation was found or (b) severely sanction them if a policy was later found to have been violated. Oregon admits that, as described in response to paragraph 37, it took steps for plaintiff's sake to encourage a process by which the accused students would waive their right to a full and formal panel hearing, and instead agree to the more informal process of an administrative conference, while preserving Oregon's ability to issue severe sanctions if a violation of the Code of Conduct was found. Defendants further state that plaintiff's attorney acknowledged that plaintiff would not receive a physical copy of the results of the administrative conference but instead, plaintiff was permitted to fully review the entire decision in the conduct officer's office. That was all part of the process agreed to up front in order to help encourage the administrative conference process instead of the formal panel hearing process.

39.    Answering paragraph 39, defendants deny that Oregon agreed to help the students transfer to another school by omitting the words "sexual misconduct" from their transcripts and guaranteeing lack of expulsion. Oregon states that plaintiff and the accused

Page 12 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

students agreed that if the accused students were found responsible for a conduct code violation, the accused students' transcripts would refer to a student conduct code violation and, upon inquiry from another institution, the student's conduct record would be disclosed.

40.     Answering paragraph 40, defendants deny that Oregon Director of Student Conduct found all three men responsible for "gang raping" or sexually assaulting plaintiff.  The Director of Student Conduct found all three men responsible for engaging in sexual conduct without explicit consent, which was listed as a violation of the then-in-effect Code of Conduct. Defendants state that the men were each suspended from Oregon for 4-10 years.

41.     Answering paragraph 41, defendants deny that any of the men were "adjudicated sex offenders."  Oregon is not a prosecuting authority and has no authority to determine whether or not an individual is a "sex offender" under the law.  Defendants further state that two of the male students transferred to other schools.  Defendants lack information sufficient to admit or deny whether the two male students are playing basketball at the other schools.  Defendants deny the remaining allegations of paragraph 41.

42.     Answering paragraph 42, defendants deny the allegation that Oregon significantly delayed completion of the disciplinary proceedings against the three men until immediately after the conclusion of the academic quarter.  Oregon further states that it attempted to schedule hearings with the three male students (and their attorney advisors) as early as possible and attempted to schedule them prior to the end of the Spring academic term but were unable to do so due in large part to the schedules of the male students' attorney advisors.

43.     Answering paragraph 43, defendants deny the allegation that Oregon "delayed finalizing the disciplinary proceeding to allow the three players to complete the academic quarter in good standing and transfer out of the university without harming the basketball program's Academic Progress Rate * * * and incurring NCAA sanctions, including the loss of scholarships and/or postseason bans."  Defendants deny the allegations of paragraph 43, which are assertions of a completely speculative and inaccurate local media report.

Page 13 -   Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

### RESPONSE TO PLAINTIFF'S ASSERTIONS THAT "[OREGON] UNLAWFULLY OBTAINS PLAINTIFF'S COUNSELING RECORDS"

44.    Answering paragraph 44, defendants admit that Oregon's counsel and plaintiff's counsel have discussed the matters and the allegations.  Defendants further state that plaintiff, through her lawyers, has asserted in writing that she is entitled to recover damages for emotional distress, and that plaintiff has made other assertions that directly place her emotional and psychological state at issue, including records maintained by Oregon, such as counseling records.  Defendants lack sufficient knowledge and information to admit or deny the remaining allegations of paragraph 44, which relate to what specifically is in the records, and therefore deny them.

45.    Answering paragraph 45, defendants deny that there was a "release" of a file because the records are Oregon's records, and Oregon has not released such records to anyone outside of Oregon, or anyone within Oregon, who does not have a lawful basis to receive the records.  Defendants deny the allegation that "counsel for plaintiff told [Oregon] officials and attorneys that [p]laintiff did not authorize the release of her privileged counseling file and instructed that the school administration and attorneys were not permitted to obtain those records."  Defendants further deny that any such instruction would in any event preclude defendants' attorneys from obtaining records necessary to do their jobs.  Further, plaintiff's attorney asserted, before records were transferred to the office for Oregon counsel, that the records included information relevant to plaintiff's claims and that plaintiff's counsel wanted copies of such records.  Oregon further states that there are multiple legal bases for Oregon to collect and review plaintiff's counseling records including but not limited to the following.  First, counseling records maintained by a University Counseling and Testing Center are governed by the Family Educational Rights and Privacy Act, which allows Oregon to provide the records to its attorneys.  In addition, the applicable Oregon Tort Claims Act allows a public body to collect, review, and investigate all relevant documents and facts after it receives notice of a plaintiff's

Page 14 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

intent to sue it.[6]  Further, under Oregon law, a plaintiff who places her psychological state at issue by seeking damages for emotional distress waives any psychotherapist/patient privilege or doctor/patient privilege and is required to disclose counseling records related to her psychological state.  Defendants also deny the implication that information related to plaintiff's counseling is not relevant.  The counseling records may have information tending to confirm or rebut her allegations and, under Oregon law, Oregon is entitled to review them.  Finally, although Oregon may lawfully review its records about plaintiff for the reasons stated above, Oregon has not done so.  Rather, Oregon's counsel simply had the records gathered pursuant to plaintiff's Tort Claim Notice and because plaintiff's counsel had requested a copy of the records be sent to them.  Accordingly, defendants deny the false allegations alleged in Paragraph 45 of plaintiff's complaint.

46.    Answering paragraph 46, defendants admit that Oregon appropriately gathered relevant records from Oregon employees.  Defendants further state that the governing laws permit and encourage collecting records in such circumstances.  Defendants deny the remaining allegations of paragraph 46.

47.    Answering paragraph 47, Oregon did not unlawfully collect privileged records to gain advantage in preparing for any future litigation and therefore deny the allegations of paragraph 47.

---

[6] Plaintiff sent Oregon a tort claims notice on or about September 2, 2014, informing it that she intended to sue for damages.  As explained by the Oregon Supreme Court, "The purpose of the requirement of the Oregon Tort Claims Act that any person who claims damages from a public body under the Oregon Tort Claims Act 'shall cause to be presented to the public body within 180 days after the alleged loss or injury a written notice stating the time, place and circumstances thereof, and the amount of compensation or other relief demanded' is to give the public body timely notice of the tort and allow its officers an opportunity to investigate the matters promptly and ascertain all the necessary facts." *Urban Renewal Agency of City of Coos Bay v. Lackey*, 549 P 2d 657, 660 (Or 1976).

Page 15 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

70003499.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**RESPONSE TO PLAINTIFF'S FIRST CLAIM FOR RELIEF**
**Violation of Title IX, 20 USC § 1681(a) (Against Defendant Oregon)**
**Deliberate Indifference to Prior Sexual Violation**

Oregon incorporates its prior responses.

48.    Answering paragraph 48, Oregon denies the allegation that it "had actual knowledge of [the Student's] prior sexual harassment/rape of a female student at Providence from its recruiting investigation" and denies the remaining allegations of paragraph 48.

49.    Answering paragraph 49, Oregon denies the allegation that it "had actual knowledge of the substantial risk that [the Student] would sexually harass other female students at [Oregon] based on his prior conduct" and denies the remaining allegations of paragraph 49.

50.    Oregon denies the allegations of paragraph 50 because they are premised on the false assumption that Oregon had actual knowledge of a "prior sexual harassment/rape of a female student at Providence."

51.    Answering paragraph 51, Oregon denies that it failed "to address the risk posed by Austin in light of prior allegations of sexual misconduct," denies that it acted unreasonably in light of the known circumstances, and denies the remaining allegations of paragraph 51.

52.    Answering paragraph 52, Oregon denies that it was deliberately indifferent to any substantial risk that the Student would sexually harass other female students at Oregon and denies the remaining allegations of paragraph 52.

53.    Answering paragraph 53, Oregon denies that "as a result of [Oregon's] deliberate indifference, [p]laintiff was subjected to extreme sexual harassment in the form of rape by [the Student] and his accomplices."

54.    Answering paragraph 54, Oregon denies that "the sexual harassment that [p]laintiff suffered was so severe, pervasive, and objectively offensive that it deprived her of access to educational opportunities and benefits by creating a permanent and extreme hostile educational environment."

Page 16 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

55.    Answering paragraph 55, Oregon does not want any student to suffer, including plaintiff, and Oregon continues to support plaintiff.  But Oregon denies that it violated Title IX in any regard, and therefore denies that "plaintiff has suffered damages and injuries as a result of [Oregon's] violations of Title IX" as alleged in the complaint.

### RESPONSE TO PLAINTIFF'S SECOND CLAIM FOR RELIEF
#### Violation of Title IX, 20 USC § 1681(a) (Against Defendant Oregon)
#### Deliberate Indifference to Plaintiff's Report of Rape

Oregon incorporates its prior responses.

56.    Answering paragraph 56, Oregon admits that on March 9, 2014, Oregon learned of an off-campus alleged sexual assault of plaintiff.  Oregon denies the remaining allegations of paragraph 56.

57.    Answering paragraph 57, Oregon denies that as early as December 2013 or January 2014, it was on notice of other allegations of sexual assault and sexual misconduct by the Student.

58.    Answering paragraph 58, Oregon denies that it was deliberately indifferent to reports of alleged rape and sexual misconduct and denies the remaining allegations of paragraph 58.

59.    Answering paragraph 59, Oregon states that no disciplinary measures were implemented while, as plaintiff asked, Oregon allowed EPD to investigate and before the student-conduct process was completed.  Oregon denies the remaining allegations of paragraph 59.

60.    Answering paragraph 60, Oregon denies that it made special arrangements for the three students and delayed finalizing disciplinary proceedings in order to protect the basketball program's academic progress rate.

61.    Answering paragraph 61, Oregon denies the allegation that it failed to timely investigate or complete disciplinary proceedings or that it did so in order to protect the basketball program; denies that it subjected plaintiff to a hostile educational environment; denies

Page 17 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

that plaintiff was effectively barred access to educational opportunities and benefits; and denies the remaining allegations of paragraph 61.

62.    Answering paragraph 62, Oregon denies that it violated Title IX and denies that it caused plaintiff to suffer any damages or injuries.

### RESPONSE TO PLAINTIFF'S THIRD CLAIM FOR RELIEF
#### Negligence (Against Defendant Oregon)

Oregon incorporates its prior responses.

63.    Oregon denies the allegations of paragraph 63.

64.    Answering paragraph 64, Oregon denies that it "either knew or, in the exercise of reasonable care, should have known, that [the Student] had a history of sexual assault against a female student at another institution."

65.    Answering paragraph 65, Oregon denies that it breached any duty by recruiting the Student to Oregon and denies that Oregon was aware of any basis to require counseling, supervision, or monitoring of his behaviors.  Oregon denies the remaining allegations of paragraph 65.

66.    Answering paragraph 66, Oregon denies that it was foreseeable that the Student's presence on campus would expose female students such as plaintiff to sexual assault and denies the remaining allegations of paragraph 66.

67.    Answering paragraph 67, Oregon denies that Oregon's actions were a substantial factor in causing damage or injury to plaintiff.

### RESPONSE TO PLAINTIFF'S FOURTH CLAIM FOR RELIEF
#### Deprivation of Due Process—Liberty—Under 42 USC § 1983
#### (Against Defendant Altman)

Defendants incorporate their prior responses.

68.    Answering paragraph 68, defendants admit that plaintiff has a constitutionally protected liberty interest in her own bodily security.

70003499.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

69.     Answering paragraph 69, defendants admit that defendant Altman acted under color of state law and that at all times he acted within the course and scope of his employment.  Defendants deny the implication of paragraph 69 that defendant Altman engaged in wrongdoing and deny the remaining allegations of paragraph 69.

70.     Answering paragraph 70, defendants deny that Altman had actual knowledge of any prior sexual harassment or assault of women at Providence by the Student. Defendants deny the allegations of paragraph 70.

71.     Answering paragraph 71, defendants deny that Altman had actual knowledge of any substantial risk that the Student would sexually harass female students at Oregon.

72.     Answering paragraph 72, defendants deny that Altman recruited the Student to Oregon with deliberate indifference to a known and obvious danger or with no regard for the protection of female students in the Oregon community.  Defendants deny the remaining allegations of paragraph 72.

73.     Answering paragraph 73, defendants deny that Altman acted with deliberate indifference to a known and obvious danger and deny the remaining allegations of paragraph 73.

74.     Answering paragraph 74, defendants deny that Altman's actions deprived plaintiff of her constitutional right to bodily security and deny the remaining allegations of paragraph 74.

### RESPONSE TO PLAINTIFF'S FIFTH CLAIM FOR RELIEF
### Violation of Equal Protection, U.S. Constitution
### Fourteenth Amendment, Under 42 USC § 1983
### (Against Defendant Altman)

Defendants incorporate their prior responses.

75.     Answering paragraph 75, defendants admit that defendant Altman acted under color of state law and that at all times he acted within the course and scope of his

Page 19 -   Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

employment.  Defendants deny the implication of paragraph 75 that defendant Altman engaged

in wrongdoing and deny the remaining allegations of paragraph 75.

76.    Answering paragraph 76, defendants deny that Altman subjected plaintiff

to severe sexual harassment including rape or a hostile educational environment on the basis of

sex and deny the remaining allegations of paragraph 76.

77.    Answering paragraph 77, defendants deny the implication that Altman

engaged in sex-based discrimination and deny the remaining allegations in paragraph 77.

78.    Answering paragraph 78, defendants deny that Altman deprived plaintiff

of any rights and deny the remaining allegations of paragraph 78.

79.    Answering paragraph 79, defendants deny that Altman caused damages to

plaintiff and deny the remaining allegations of paragraph 79.

### RESPONSE TO PLAINTIFF'S SIXTH CLAIM FOR RELIEF
### Intrusion Upon Seclusion
### (Against Defendant Oregon)

Defendants incorporate their prior responses.

80.    Answering paragraph 80, defendants deny the allegation that they

accessed plaintiff's confidential counseling records without her authorization or contrary to law.

As stated above, there are multiple legal bases which allow Oregon to collect and review

plaintiff's counseling records under the circumstances present here.  Defendants deny the

remaining allegations of paragraph 80.

81.    Defendants deny the allegations of paragraph 81.

82.    Defendants deny the allegations of paragraph 82.

### OTHER DEFENSES AND AFFIRMATIVE DEFENSES

### FIRST DEFENSE
### (Failure to State a Claim)

83.    Plaintiff's complaint fails to state claims upon which relief can be granted.

70003499.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## SECOND DEFENSE
### (Lack of Subject-Matter Jurisdiction)

84.     Under Fed R Civ P 17(a)(1), "[a]n action must be prosecuted in the name of the real party in interest."  Because plaintiff has not identified herself by her real name in the court record (either under seal or otherwise), and therefore plaintiff is not the real party in interest, the court has no subject-matter jurisdiction over this case unless and until plaintiff takes required steps to proceed under a pseudonym.

## THIRD DEFENSE
### (Prompt and Effective Action)

85.     Without waiving any defenses, Oregon cannot be found to have violated Title IX because it had policies designed to prevent and correct harassment and, upon notice of the alleged sexual assault in plaintiff's complaint, Oregon took prompt and effective action to respond to plaintiff's report.

## FOURTH DEFENSE
### (Not an Education Program or Activity)

86.     Oregon cannot be found liable under Title IX for the assault alleged in plaintiff's complaint because it occurred off campus and under circumstances over which Oregon does not exercise substantial control.

## FIFTH DEFENSE
### (Intervening Acts of Third Parties)

87.     If plaintiff sustained injuries and incurred any expenses as claimed, they were caused in whole or in part by the acts or omissions of others for whose intervening conduct or negligence Oregon is not responsible.

## SIXTH DEFENSE
### (Foreseeability)

88.     Injury to plaintiff was not foreseeable as a matter of law.

70003499.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## SEVENTH DEFENSE
### (Superseding Cause)

89.    Any injury to plaintiff was caused by the act of third persons, which by their intervention prevents Oregon from being liable for harm to plaintiff.

## EIGHTH DEFENSE
### (No Causal Link)

90.    Oregon did not cause harm to plaintiff.

## NINTH DEFENSE
### (No Special Relationship/No Duty)

91.    Oregon had no special relationship under the law with plaintiff.  Oregon has no duty under common law negligence theories to plaintiff.

## TENTH DEFENSE
### (Discretionary Immunity)

92.    Oregon is entitled to discretionary immunity regarding its recruiting of students and admissions process.

## ELEVENTH DEFENSE
### (Sole Fault of a Non-Party)

93.    Without waiving any defenses, any harm to plaintiff was caused by the conduct of a third party or parties, namely the three men she accuses of sexual assault in her complaint, by their negligent or intentional conduct related to obtaining consent.

## TWELFTH DEFENSE
### (Qualified Immunity—Altman)

94.    Altman is entitled to qualified immunity against plaintiff's claims.

## THIRTEENTH DEFENSE
### (No Affirmative Conduct)

95.    Altman did not engage in any affirmative conduct to place plaintiff in danger.

Page 22 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## FOURTEENTH DEFENSE
### (No Unreasonable Risk)

96.     There was no unreasonable risk, and Altman did not intend to expose plaintiff to an unreasonable risk.

## FIFTEENTH DEFENSE
### (Eleventh Amendment Immunity—Oregon)

97.     Oregon is entitled to Eleventh Amendment immunity against plaintiff's claim.

## SIXTEENTH DEFENSE

98.     Without waiving any defenses, plaintiff declined to utilize all support and resources made available to her as described in part in paragraph 31, as was her right and her choice.  To the extent utilizing such support and resources would have reduced any damages plaintiff now seeks in this lawsuit, defendants are not liable for such damages.

## SEVENTEENTH DEFENSE
### (Tort-Claims Cap)

99.     Without waiving any defenses or denials, if plaintiff were able to pursue a tort claim against Oregon, the statutory limitations of the Oregon Tort Claims Act would apply.

## EIGHTEENTH DEFENSE
### (Failure to Join Parties Under Fed R Civ P 19)

100.     Plaintiff has failed to join a party or parties necessary for the just adjudication of her claim under the requirements of Rule 19 of the Federal Rules of Civil Procedure, including but not limited to the three men she accuses of sexual assault, because complete relief cannot be accorded among those already parties and the three men have an interest in this action and are so situated that disposing of the action in their absence may impair or impede their ability to protect that interest and/or will subject Oregon to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of that interest. Defendants therefore reserve all rights under Rule 19, including without limitation to move to

Page 23 -   Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

join necessary parties or to move to dismiss the complaint for failure to join indispensable parties.

### NINETEENTH DEFENSE
### (Unclean Hands/Estoppel)

101.    Plaintiff's attorney represented plaintiff throughout Oregon's investigation of her allegations and conduct proceeding, and consented to the process about which he now complains.  Plaintiff is therefore estopped or barred under the doctrine of unclean hands from complaining about the process.

### COUNTERCLAIM[7]
### (Attorney Fees; 42 USC § 1988(b) and The Court's Inherent Power)

102.    The Supreme Court has established a high hurdle for prevailing defendants to clear before being awarded attorney fees under 42 USC § 1988, but that hurdle is not insurmountable.  When a plaintiff and her attorney file a lawsuit with claims that are without foundation and lacking any objectively reasonable basis, defendants are entitled to recover attorney fees from the plaintiff.  And, under the court's inherent power, the court may find that the plaintiff's counsel's actions warrant allowing the defendant to recover those fees from plaintiff's counsel in the alternative.  This is such a case.

103.    Specifically, at least the following allegations in plaintiff's complaint are frivolous, unreasonable, and lacking any objectively reasonable foundation (*see* Complaint ¶¶ 24, 25, 28, 34, 43, 48, 49, 50, 51, 57, 64, 70, 71, 72, 73):

- The allegation that Altman or Oregon knew that the Student was accused of rape at Providence.

---

[7] Oregon files this answer instead of moving to dismiss because of the standard under Fed R Civ P 12(b)(6).  Here, the reason the complaint is frivolous is because the allegations are demonstrably not true and plaintiff's counsel is either aware that they are not true or has recklessly asserted them.  Therefore, Oregon files this answer and will seek alternative recourse for the frivolous nature of plaintiff's counsel's claims including seeking its attorney fees from plaintiff's counsel.

Page 24 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

- The allegation that Altman or Oregon discussed an allegation of gang rape or sexual misconduct made against the Student while a student at Providence or were otherwise aware that the Student was suspended from Providence for alleged sexual misconduct.

- The allegation that Altman or Oregon "knowingly brought a reported sex offender to the [Oregon's] campus in Eugene."

- The allegation that the Student's mother, "when asked about what the [Oregon] coaches knew, said, 'we told them everything. They knew everything'" wrongly implying that she told Oregon employees about an alleged sexual assault. *See* Exhibit A (Declaration of Tammy Austin).

- The allegation that Oregon "delayed taking any action" regarding plaintiff's allegation of sexual assault in March 2014 "for over two months."

- The allegation that Oregon delayed finalizing the disciplinary proceeding to allow the three players to complete the academic quarter in good standing, all in an effort to avoid impacting the Academic Progress Rate.

104. Plaintiff's attorneys filed a lawsuit with unfounded allegations in an attempt to damage a good man's reputation,[8] curry favor and gain traction in the media, and coerce a public university to pay a hefty sum to plaintiff even though it has done nothing wrong. While filing lawsuits that are unsupported by the facts and presenting the media with allegations as though they were true has become an all-too-common strategy, Oregon will not bow to such pressure. Oregon will defend itself and trust that the justice system and the facts will prevail. In this case plaintiff's counsel's actions threaten to harm not only Oregon and Altman but also all

---

[8] *See, e.g.*, John Canzano, *Every Day Oregon Stands With Dana Altman Is Another Step Into the Muck*, Oregonian, Jan. 8, 2015 (accepting as true the false allegations in the complaint that Altman knew about prior allegations of rape against Austin and calling for his termination).

70003499.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

sexual assault survivors in Oregon's campus community.  Here, the publication of false allegations about Oregon's handling of a report of an alleged sexual assault creates a very real risk that survivors will wrongly be discouraged from reporting sexual assaults and sexual harassment to Oregon, in direct contravention of the goals of both Title IX and Oregon. Conveying the facts about how Oregon properly handled plaintiff's case is necessary to demonstrate the high priority Oregon gives to honoring the rights guaranteed by Title IX.

106.    Plaintiff's claims are frivolous, unreasonable, and without foundation.

106.    Oregon has incurred and will continue to incur reasonable attorney fees to defend this matter.  Oregon is entitled to recover its reasonable attorney fees from plaintiff, or in the alternative, from plaintiff's counsel.[9]

WHEREFORE, having fully answered plaintiff's complaint, defendants pray as follows:

1.    That the court dismiss plaintiff's complaint;

2.    That the court enter judgment in favor of defendants;

---

[9] *Margolis v. Ryan*, 140 F3d 850, 854-55 (9th Cir 1998) (finding that the district court did not abuse its discretion in awarding defendants their attorney fees because appellants/plaintiffs' Section 1983 claim was based on nothing more than "wild speculation" and because, if plaintiffs had "made a reasonable inquiry into the applicable facts and law," they would have discovered the insufficiency of their civil-rights claim).  Similarly, here, plaintiff's claims are groundless.

Page 26 -    Defendants' Answer, Affirmative Defenses, and Counterclaim

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

   3.  That defendants recover their attorney fees, costs, and disbursements incurred herein; and

   4.  That defendants be granted such other and further relief as the court deems just and equitable.

   DATED this 9th day of February, 2015.

        MILLER NASH GRAHAM & DUNN LLP


        */s/Michelle Barton Smigel*
        Michelle Barton Smigel, P.C.
        OSB No. 045530
        michelle.smigel@millernash.com
        Michael Porter, P.C.
        OSB No. 003560
        mike.porter@millernash.com
        Phone: (503) 224-5858
        Fax: (503) 224-0155

        Attorneys for Defendants University of Oregon
        and Dana Dean Altman

Page 27 - Defendants' Answer, Affirmative Defenses, and Counterclaim

70003499.1        MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

I hereby certify that I served the foregoing defendants' answer, affirmative

defenses, and counterclaim on:

Ms. Jennifer J. Middleton
Johnson, Johnson & Schaller, PC
975 Oak Street, Suite 1050
Eugene, Oregon  97401-3124
Fax:  (541) 484-0882
E-mail:  jmiddleton@justicelawyers.com

*Attorney for Plaintiff Jane Doe*

Mr. John C. Clune
Mr. Keith M. Edwards
Hutchinson Black and Cook, LLC
921 Walnut Street, Suite 200
Boulder, Colorado  80302-5173
Fax:  (303) 442-5693
E-mail:  clune@hbcboulder.com
      kedwards@hbcboulder.com

*Attorneys for Plaintiff Jane Doe*

☒ **CM/ECF system transmission.**

☐ **E-mail.**  As required by Local Rule 5.2, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

☐ **Overnight courier, delivery prepaid.**

DATED this 9th day of February, 2015.

/s/Michelle Barton Smigel
Michelle Barton Smigel, OSB No. 045530
Of Attorneys for Defendants University of
Oregon and Dana Dean Altman

70003499.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204